Argued February 8, reversed and suit dismissed March 13, rehearing denied April 3, 1917.

# ASPINWALL *v.* DUNLAVY.

(163 Pac. 596; 163 Pac. 1169.)

**Deeds—Property Conveyed—Mistake—Evidence.**

1. In an action to determine a boundary dispute, failure to include in deed all land marked out by surveyor *held* not a mutual mistake on part of defendant and grantor; their intention being that the survey should conform to deed, and that defendant should have 20.05 acres, the amount he paid for.

[As to construction of boundaries, see notes in 22 **Am. St. Rep.** 34; 30 **Am. St. Rep.** 453.]

## ON PETITION FOR REHEARING.

**Evidence—Weight—Effect as to Party Offering Witness.**

2. A party vouches for the credibility of assertions of his own witness, given in response to questions asked by him.

**Deeds—Mutual Mistake—Evidence.**

3. The solution of question whether there was a mutual mistake in deeds does not depend upon cupidity of one party, nor upon inconvenience caused the other.

From Marion: WILLIAM GALLOWAY, Judge.

Department 1. Statement by MR. JUSTICE HARRIS.

John S. Dunlavy and Britt Aspinwall are adjoining land owners who purchased their respective tracts from M. L. Jones and his wife Emma H. Jones. This controversy involves a narrow strip of land about 18.42 chains in length, 16 links wide at one end and 18½ links at the other and embraces 0.31 of an acre. Emma H. Jones owned about 100 acres of land bounded on the west by the west line of the Linus Brooks Donation Land Claim and on the north by a county road extending almost but not quite due east and west. The land owned by Emma H. Jones was in a single field, was without partition fences and was not platted. About the first of November, 1906, M. L. Jones, who trans-

acted all the business for himself and wife, agreed to sell twenty-acre tracts of the Jones land to L. C. Matthes and Britt Aspinwall, but it was understood that the purchasers were to have the tracts surveyed at their own expense, and accordingly Matthes and Aspinwall procured Alonzo Gesner to survey three tracts. Commencing at the west line of the Linus Brooks Donation Land Claim or the west boundary of the Jones land, Gesner surveyed off three tracts, abutting on the county road, which for convenience may be referred to as tracts 1, 2 and 3. Evidently Gesner intended to mark the corners of each of the three tracts described in the deeds to Matthes and Aspinwall, for he drove iron pipes into the ground for that purpose. After Gesner made his survey two deeds were prepared and submitted to M. L. Jones and wife who signed and de-· livered them on November 17, 1906, one to Aspinwall and the other to Matthes. The deed received by Aspinwall conveyed tracts 1 and 3 to him while the other deed transferred tract 2 to Matthes. The Aspinwall deed describes tract 1 thus:

"Beginning at a point in the center of the county road on the West boundary line of D. L. C. of Linus Brooks and wife number sixty-four, 20.50 chains 30 minutes East of the northwest corner of said D. L. C., and running thence South on the West line of said D. L. C. number sixty-four 18.26 chains; thence East 10.98 chains; thence North 30 minutes West 18.26 chains to center of county road; thence West along the center of county road 10.98 chains to place of beginning, and containing 20.05 acres of land more or less."

Tract 3 is described as follows:

"Beginning at a point 20.50 chains South 30 minutes East and 21.96 chains East of the northwest corner of the D. L. C. of Linus Brooks and wife Number sixty-four, in the center of the county road, and running

thence South 30 minutes East 18.26 chains; thence East 10.98 chains; thence North thirty minutes West, 18.26 chains to center of county road; thence West along center of the county road 10.98 chains to the place of beginning, and containing 20.05 acres of land more or less."

The Matthes deed describes tract 2 in this language:

"Beginning at a point 20.50 chains S. 30 minutes East and 10.98 chains East of the northwest corner of the D. L. C. of Linus Brooks and wife No. 64 in the center of the county road, and running thence South 30 minutes East 18.26 chains, thence East 10.98 chains, thence North 30 minutes West 18.26 chains to the center of the county road, thence West along the center of county road 10.98 chains to the place of beginning, and containing 20.05 acres of land more or less."

Subsequently on November 20, 1906, Jones and wife conveyed what may be designated as tract 4 to John S. Dunlavy describing the premises thus:

"Beginning in the center of the county road at a point 20.50 chains South 0 degrees 30 minutes East, along the west boundary line of the Linus Brooks Donation Land Claim number sixty-four and East 32.94 chains, thence South 0 degrees 30 minutes East 18.26 chains; thence East 10.98 chains; thence North 0 degrees 30 minutes West 18.26 chains to the center of the county road, thence West along the center of the county road 10.98 chains to place of beginning, containing 20.05 acres of land, more or less."

The agreement between Jones and Aspinwall required the latter to build a fence on the east line of tract 3 at his own expense and accordingly either in 1907 or 1908 Aspinwall constructed a fence along what he concluded was the east line of tract 3. He was led to believe that his fence was properly located because of the presence of a wooden stake in the edge of the road near the northeast corner and a similar stake

near the southeast corner of tract 3; and it may be added that it was ascertained in January, 1915, that the fence was on a line between the two iron pipes which Gesner had evidently driven in the ground to mark the southeast and the northeast corners of tract 3. Dunlavy was not present when the fence was built nor did he participate in its location. In January, 1915, Dunlavy caused a survey to be made and it was then discovered that the fence between Aspinwall and Dunlavy was not located on a line which would correspond with the courses and distances given in the deeds for tracts 3 and 4 but that the fence was east of the east boundary of tract 3 as that tract is described in the deed to Aspinwall. When Aspinwall refused to move his fence back to a line on the ground which would correspond exactly with the courses and distances given in his deed, Dunlavy commenced an action in ejectment to recover possession of the strip of land between the fence and the east line of tract 3 as that line would be if located pursuant to the calls in the Aspinwall deed. Aspinwall answered to the action in ejectment and then filed a complaint in equity in the nature of a cross-bill, alleging that Emma H. Jones caused a survey to be made and iron pipes driven in the ground to mark the four corners of tract 3; that Jones and wife and Aspinwall intended to describe tract 3 in the deed to Aspinwall so as to include all the land between the four corners marked by the iron pipes driven in the ground by Gesner ''but through the error of the scrivener of said deed of conveyance, and by mutual mistake'' of Jones and wife and Aspinwall ''the said deed of conveyance did not describe and include all the land that was intended to be conveyed.'' M. L. Jones and wife were not made parties to the suit. A demurrer to the cross-bill was overruled

and Dunlavy filed an answer consisting of admissions and denials. The decree of the trial court was for Aspinwall and Dunlavy has appealed.

REVERSED AND DISMISSED.

For appellant there was a brief over the name of *Messrs. Pogue, Page & Roberts,* with an oral argument by *Mr. Myron E. Pogue.*

For respondent there was a brief and an oral argument by *Mr. Samuel T. Richardson.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. The ownership of the disputed strip depends upon whether the deed of November 17, 1906, to Aspinwall is to remain unchanged. If the description in the deed is not altered then Aspinwall cannot claim to be the owner of the controverted piece of land; but, if the description is changed so as to describe lines drawn between the four iron pipes driven by Gesner for the purpose of marking the four corners of tract 3 then the deed will include the litigated land.

For the purposes of this opinion we shall assume that the respondent is correct when he says that the issues of fact are "narrowed down to the one question whether or not by mutual mistake the land in controversy was omitted from the deed to respondent." A careful reading of the record convinces us that there was no mistake, but that, on the contrary, Jones and wife conveyed exactly what they intended to sell and Aspinwall received what he agreed to purchase. We can best understand the situation if attention is first directed to the descriptions found in all the deeds. Not a single monument is referred to in any of the

deeds except the northwest corner of the Linus Brooks
Donation Land Claim, the west boundary line of the
donation claim and the center of the county road. No
mention is made of the iron pipes in the deeds to
Matthes, Aspinwall and Dunlavy. After first making
an appropriate tie the northwest corner of each tract
is made the place of beginning for the description of
that tract. The northwest corner of tract 1 is on the
donation claim line and at a point in the center of the
county road; the northwest corner of tract 2 is in the
center of the county road and is 10.98 chains East from
the northwest corner of tract 1; the northwest corner
of tract 3 is in the center of the county road and 21.96
chains east from the northwest corner of tract 1; the
northwest corner of tract 4 is in the center of the
county road and 32.94 chains east from the northwest
corner of tract 1. Looking at the descriptions of the
four tracts as they appear in the deeds to Matthes,
Aspinwall and Dunlavy, it will be seen that each tract
abuts upon the county road; that the course and dis-
tance of each boundary line of each tract is exactly the
same as the course and distance of the corresponding
boundary line of every other tract. In short the four
several tracts are equal and uniform in size.

The result is different, however, if the boundaries
of the four tracts are to be determined by lines run
between the iron pipes which Gesner placed at the dif-
ferent corners of tracts 1, 2 and 3. Without exception,
the course of every line is different from the course
given in the deeds and each line is longer than the
corresponding line found in the deed. Commencing
at the iron pipe which marks the northwest corner or
place of beginning for tract 1 and running easterly
along the center of the county road, it is 10.992 chains
to the iron pipe which Gesner evidently drove in the

ground for the purpose of indicating the northeast corner of tract 1 and the northwest corner of tract 2; it is 11.108 chains from the second iron pipe to the next iron pipe or the place which Gesner evidently intended to mark as the northeast corner of tract 2 and the northwest corner of tract 3; and it is 11.026 chains from the third iron pipe to the fourth iron pipe or to the place which Gesner evidently marked as the northeast corner of tract 3. The north boundary line of each of the tracts 1, 2 and 3 exceeds 10.98 chains if the iron pipes found in the center of the county road are to govern and this excess accounts for the location of the fence constructed by Aspinwall. Apparently the persons who carried the chain measured "long."

It is plain that Gesner intended that the iron pipes should mark the corners called for in the deeds rather than that the courses and distances given in the deeds should be governed by the sites of the iron pipes. This conclusion is corroborated by the testimony of Matthes who says that after the survey he received "a plat of it from Mr. Gesner" and that the description of his tract, or tract 2, was the same as the plat. Undoubtedly Gesner intended to survey off three twenty-acre tracts because Jones and wife were to sell two twenty-acre tracts to Aspinwall and one to Matthes. The parties understood that the purchasers were to have the tracts surveyed at their own expense; and after the survey was made deeds were presented to Jones and wife who signed them without any knowledge of the location of any of the iron pipes. M. L. Jones testified thus:

"I intended to convey them twenty acres apiece; * * I intended to convey those parties, all of them, exactly what I had agreed to convey, and they made their own survey and put in the description, I think; they furnished the description of the land; * * I intended to convey to them just exactly what they paid me for; * *

I didn't make out the deeds. They were made out and brought to me. They conformed to the agreement that I had made with them to convey them twenty acres of land apiece."

According to the descriptions of tracts 1, 2 and 3 as found in the deeds the area of each tract is 20.05 acres. Aspinwall purchased tracts 1 and 3 aggregating 40.10 acres and according to the recital in the deed he paid $2,005 or at the rate of $50 per acre. Matthes paid $1,002.50 for tract 2 or at the rate of $50 per acre. The recitals in the deeds about the amount of the consideration demonstrate that all persons concerned believed that Jones and wife were transferring and the purchasers were paying for the land described in the deeds. The conveyances give to Aspinwall and Matthes the exact acreage called for and the grantee paid for that acreage at a fixed rate per acre. If, however, the deeds are to be controlled by the iron pipes then tracts 1, 2 and 3 will each contain more than 20.05 acres.

Jones intended to sell three twenty-acre tracts: One to Matthes and two to Aspinwall. Gesner intended to survey off three tracts, each to contain twenty acres. In making the survey he indicated the corners with iron pipes and undoubtedly believed that those pipes were placed in exact conformity with the calls in the deeds, for the record discloses that subsequent to the survey he prepared a plat and the plat was the same as the descriptions in the deeds. It is more than probable that Gesner wrote out the descriptions for tracts 1, 2 and 3 although that conclusion can only be supported by circumstantial evidence. Furthermore, the purchasers paid for the exact acreage which the deeds conveyed to them. In view of this situation it cannot be said that any land was omitted from either of the deeds by reason of the mutual mistake of the grantors

and grantee.    Moreover, Dunlavy had no knowledge of the iron pipes.    According to the description in his deed his northwest corner coincides with the northeast corner of tract 3 as described in the Aspinwall deed. When Dunlavy purchased there was no fence.    His deed did not embrace an inch of ground included in the Aspinwall deed, but tracts 3 and 4 adjoined each other without either covering the other.    No fact or circumstance was brought to the attention of Dunlavy requiring him to inquire whether the Aspinwall deed had omitted any land even if it be assumed that a mutual mistake can be attributed to Jones and wife and Aspinwall.

It is true that on February 11, 1915, Jones and wife gave a quitclaim deed to Aspinwall to all the land now claimed by the latter.    Jones and wife had, however, previously given a deed to Dunlavy covering the disputed territory and consequently a subsequent quitclaim deed would not operate to convey any title to Aspinwall for the reason that on February 11, 1915, Jones and wife had none to convey.    M. L. Jones explains the quitclaim deed by saying that it was brought to him by Pierre Aspinwall who said:

"He desired a quitclaim deed to some land that I had conveyed to Britt Aspinwall formerly.    I looked over the deed and made some interlineations to make it simply a quitclaim deed, conveying only the right that I held there.    I understood that I had conveyed all my ownership in the land formerly, but I had no objections to making him a quitclaim deed, conveying him simply what interest,—that is, no more interest than I had, and I didn't consider that I had any interest, but he said that it corrected some description in the land which I had given him formerly; * * I didn't make any comparisons, or didn't know what mistake they claimed was in it; didn't look that up; didn't make any comparison with the former deed; * * I simply in-

tended to correct any mistake that might have been made in the description of the land which I had formerly conveyed to Mr. Aspinwall. I had no intention of conveying any land to him which I had deeded to Mr. Dunlavy."

The description of tract 3 appearing in the deed of November 17, 1906, to Aspinwall includes all the property at that time intended to be conveyed and Aspinwall is not entitled to have the deed changed so as to include more or different land. When this cause was argued it was stated and not denied that the narrow strip in dispute was not worth to exceed $31. Under all the circumstances we think that the decree should be without costs to either party in either court. The decree is reversed and the suit is dismissed without costs to either party in any court.   Reversed and Dismissed.

Mr. Chief Justice McBride, Mr. Justice Benson and Mr. Justice Burnett concur.

---

Denied April 3, 1917.

On Petition for Rehearing.

(163 Pac. 1169.)

On petition for rehearing. Rehearing denied.

*Mr. Samuel T. Richardson,* for the petition.

*Messrs. Pogue, Page & Roberts, contra.*

Department 1.   Mr. Justice Harris delivered the opinion of the court.

The plaintiff insists in a petition for a rehearing that the difference between the courses and distances in the

deeds and the courses and distances fixed by the location of the iron pipes is so great as to make it improbable that Gesner prepared the descriptions for the deeds or that the descriptions in the deeds were taken from the Gesner survey; and the plaintiff concludes that the notary public who took the acknowledgment and also witnessed the deeds "made his own description for those deeds and that the survey that Gesner made was never consulted by him." S. A. Jones acted as the notary public and as one of the witnesses in the execution of the deeds to Aspinwall, Matthes and Dunlavy, and from those circumstances the petitioner argues that "it is evident that the person who furnished the descriptions for said different deeds never surveyed any of the tracts but made up his description from his ideas of directions without consulting any compass" and that "S. A. Jones was the person who made his own description for these deeds and that the survey that Gesner made was never consulted by him." If the fact that S. A. Jones acted as the notary public and as one of the witnesses stood alone and was neither explained nor affected by other evidence, then there might be some room for the contention of plaintiff, but the fact upon which plaintiff relies in support of the inference urged by him does not stand alone. It must be remembered that the owners agreed to sell and the purchasers to buy 20-acre tracts and that Gesner made a survey of tracts 1, 2 and 3 for the express purpose of enabling the parties to consummate their agreements. It is not within the realm of probability that after going to the expense of a survey for the very purpose of deeding the land the parties neither received nor used descriptions prepared by Gesner. It is not reasonable to suppose that the parties ignored the descriptions which Gesner must have prepared for them.

2. After admitting that Matthes testified that he received a plat of the survey from Gesner and that the description of tract No. 2 was identical with the plat, the petitioner asks: "Is it possible to put much credence in such an assertion?" The answer is: The plaintiff himself vouched for this testimony since Matthes was a witness for Aspinwall and furthermore the testimony concerning the plat was given in response to questions asked by plaintiff.

3. The issue made by the pleadings was whether the disputed land was omitted from the Aspinwall deed by reason of the mutual mistake of the parties. The solution of that question does not depend upon the cupidity of one party nor upon the inconvenience caused to the other, nor upon a loss which the petition suggests may be suffered by the plaintiff although no mention of it is made in the pleadings. Aspinwall asserted and Dunlavy denied that the disputed strip of land was omitted from the Aspinwall deed as a result of the mutual mistake of the parties to the deed. The plaintiff failed to prove the alleged mistake and therefore he must fail in this suit. The petition for a rehearing is denied.      AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.